IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs December 20, 2016

## STATE OF TENNESSEE v. JIMMY NEWELL

**Appeal from the Criminal Court for Bradley County**
**No. 14CR309      Andrew M. Freiberg, Judge**

_____

**No. E2015-01913-CCA-R3-CD**

_____

Defendant, Jimmy Newell, appeals from the trial court's denial of his motion to withdraw his guilty pleas in multiple cases. Petitioner entered guilty pleas in several cases at a single hearing as part of a "global plea deal" and received a total effective sentence of four years' incarceration. Defendant filed a *pro se* motion to withdraw his pleas. Counsel was appointed to represent him. Following an evidentiary hearing, the trial court denied Defendant's motion. Defendant appeals the trial court's ruling, asserting that his pleas were entered unknowingly and involuntarily and that his trial counsel provided ineffective assistance. Having reviewed the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Mabern E. Wall, Knoxville, Tennessee, for the appellant, Jimmy Newell.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Stephen Davis Crump, District Attorney General; and Krista Oswalt, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural history

On May 20, 2014, Defendant entered guilty pleas in several cases. Defendant was convicted of one count of assault, three counts of domestic assault, one count of theft in an amount less than $500, and two counts of theft over $1,000. Defendant received a total effective sentence of four years' incarceration. On June 3, 2014, Defendant filed a

*pro se* "Motion to Withdraw Plea and Appoint Conflict-Free Counsel." On July 16, 2014, the trial court entered an order appointing counsel and noting that it would treat the motion as a petition for post-conviction relief. Following an evidentiary hearing on August 14, 2015, the successor judge entered an order denying Defendant's motion to withdraw his guilty pleas. The court's order noted that the parties agreed, prior to the evidentiary hearing, that "the true, legal character of Defendant's Motion was one to withdraw plea[s]" rather than a post-conviction petition.

### Evidentiary hearing

Trial counsel, an assistant public defender, represented Defendant at trial. He testified that he had several plea negotiation discussions with the prosecutor prior to trial. He communicated those discussions to Defendant. Trial counsel testified that Defendant had several cases pending, and he attempted to negotiate a "universal settlement" of those cases. Prior to trial, the prosecutor made a "three-year offer" to serve by incarceration that would "encompass all [the] cases[.]" Defendant rejected that plea offer, and one of his felony theft cases (the "Kohl's" case) was set for trial. Trial counsel testified that he advised Defendant to accept the offer because he was facing a possible sentencing range of two to four years if convicted in the Kohl's case, and trial counsel believed the State's case against Defendant in that case was strong. Trial counsel testified that during the State's case-in-chief, Defendant commented to him that "he thought the trial was going very well." Trial counsel responded that he "believed [Defendant] was the only one in the courtroom" who thought that. Defendant then requested that trial counsel ask the prosecutor if the plea offer was still available. The prosecutor stated that the previous offer was no longer available, but he made an offer of "four years to serve" and that "would still include everything within that, all the misdemeanors, . . . so everything was contained." Trial counsel relayed the plea offer to Defendant, and Defendant agreed to accept the offer. Trial counsel explained Defendant's charges to him and the possible sentencing ranges, and he read the plea agreement to Defendant, and Defendant signed it.

Trial counsel testified that Defendant was "a very intelligent individual." Defendant never indicated to trial counsel that he did not understand the consequences of his guilty pleas. At Defendant's request, trial counsel asked the court if Defendant could serve his sentence on community corrections, and the court replied, "absolutely not" because it was not part of the plea agreement. Trial counsel testified that the State was "adamant" that any sentence pursuant to a plea offer could not be served on community corrections because Defendant had a prior criminal record that included assault convictions. Trial counsel testified that Defendant "understood that that was not part of his plea agreement" and that "[i]t wasn't contemplated as part of it." He testified that the State "was not willing to do anything but a to-serve offer." Trial counsel testified that he spent "an extensive time" discussing the plea offer with Defendant.

In preparation for trial, trial counsel went to Kohl's to interview the State's witnesses and the security camera footage. During trial, trial counsel stipulated as to Defendant's identity in the video because "[i]t was obviously him on the video[,]" and he wanted to avoid the officer's testifying that he recognized Defendant from his previous interactions with him.

Trial counsel represented Defendant in previous cases in which Defendant entered guilty pleas to several misdemeanors. Trial counsel discussed with Defendant the possibility of his sentences running consecutively.

On cross-examination, trial counsel acknowledged that some of Defendant's prior misdemeanor charges involved a woman named Kelly Sullivan, who trial counsel learned was the step-sister of the District Public Defender. Trial counsel "discussed whether there might be . . . any type of conflict." Defendant filed a motion requesting new counsel be appointed, but "then he gave it up. He decided not to pursue that." Trial counsel testified that he believed Defendant filed the motion because he thought trial counsel was not "doing everything [he] could for him."

Defendant testified that he had "many conversations" with trial counsel about his cases. He testified that trial counsel communicated the State's original offer to him of three years' incarceration, and he rejected the offer. He testified that he believed "the only thing [trial counsel] was concerned with was getting [him] to plead out. He was not worried about developing [his] defense[.]" Defendant "insisted [trial counsel] withdraw from [his] case" because he believed a conflict existed due to the relationship between the public defender and one of the State's witnesses. Defendant's defense to the charges against him was that the value of the items he stole from Kohl's was less than $500. Defendant asked trial counsel to file a motion to suppress the store security video.

Defendant acknowledged that he agreed to waive a mistrial and request a curative instruction instead after a detective in the case testified that Defendant refused to talk to him, thereby commenting on Defendant exercising his constitutional right to remain silent. Defendant testified that they had spent all morning picking a jury, and he did not want to spend more time in jail awaiting a new trial date. Defendant testified that after the State rested, trial counsel asked him if he had any witnesses he wanted to call. Defendant was incredulous. He told trial counsel to ask the prosecutor "if they'll take a two." Trial counsel discussed a plea agreement with the State and told Defendant, "[t]hey will take the three but not the two, and they want you to plead to everything[.]" Defendant replied that he wanted to "plead open" and ask the trial court to grant probation. Defendant testified that he did not have any prior felony convictions, and he felt that he was a good candidate for probation. Defendant testified that he "wanted

community corrections at the very least[.]" He testified that the State told trial counsel that if Defendant was "gonna plead to corrections, he's gonna get a four." Defendant testified that he understood that he was pleading guilty in exchange for a four-year sentence to be served on community corrections, and that if he "messed up on corrections," he would have to serve 30 percent of his sentence, or 14.4 months, incarcerated.

Defendant testified that during the plea hearing, he indicated that he understood the trial court's statement, "four years going to TDOC" to mean that he would be "committed to the custody of TDOC and then out on corrections[.]" Defendant testified that he had been admonished by the trial court before for "speaking out of turn[,]" and he was "shell shocked." He testified that he "acquiesced" and gave "the appropriate responses" at the plea hearing. He testified that when he returned to jail, he told another inmate that he had to serve 30 percent of a four-year sentence, or 14.4 months, and the inmate explained that was his parole eligibility and that it did not mean he was "guaranteed to get out." Defendant testified, "It wasn't until then that I discovered the difference." Defendant called trial counsel and asked him to file a "motion to put in for some corrections" or a motion . . . to reconsider" or to "reduce the judgment or something." Trial counsel did not return Defendant's phone calls. Defendant filed a *pro se* motion in order to "get back in front of the Judge and at least tell him [him]self."

Defendant testified that he was denied parole on May 18, 2015, because of the "severity" of the offense and because he had a "pending assault [charge] on a correctional officer." Defendant testified, "I was of the understanding when I took this deal that I was gonna do 14.4 months, okay, and I have been down seven, almost 17 months now."

On cross-examination, Defendant testified that he "didn't feel like [he] could address the Court." He testified, "[I]t seemed like every time that I tried to speak up and represent myself, or object when my lawyer wouldn't, you know, that it, it seemed to piss the Judge off. Not only did it piss him off, it pissed my lawyer off too." Defendant acknowledged that the trial court stated he would not grant community corrections "early on" in the hearing. He testified that he was "waiting at some point, you know, for [trial counsel] to fix it . . . to stand up and say, 'Hey listen, you know, this was part of the plea deal.'" Defendant believed that trial counsel did not have a "whole lot of option[s] that day either[.]"

Defendant testified that he gave "a true answer" when the trial court asked at the plea hearing if he understood that he could receive a longer sentence if he was convicted. Defendant testified that he understood that his sentence would be "[f]our years at 30%. At 30%, that's 14.4 months. That's what I pled out to. That was my understanding."

Assistant District Attorney General Steve Morgan testified that he "inherited" the cases against Defendant from another prosecutor. He testified that the original prosecutor made an offer to plead of three years' incarceration "to wrap up all the cases," and two cases would be dismissed. General Morgan thought it was a "fair offer based on [Defendant's] criminal history, based on the numerous charges, based on some priors that were in other states that were misdemeanors [there] but appeared [that they] could have been felonies in this state." He testified that Defendant was on probation "for at least three offenses" at the time of the offenses in this case. General Morgan revoked the offer prior to trial. After the State rested, trial counsel asked if the three-year offer was still available. General Morgan replied that it was not and offered "four [years] TDOC" with the sentences running concurrently. General Morgan testified that he "never offered community corrections because [Defendant] was pleading to some assaults," and Defendant was "on probation for assault and violation of an order of protection."

In its written order denying Defendant's motion to withdraw his guilty pleas, the court found that Defendant's motion was filed after entry of his guilty pleas but before the judgment became final; however, no manifest injustice existed to warrant withdrawal of his pleas. The trial court found Defendant's trial counsel and the prosecutor for the State to be credible witnesses. The court found Defendant's credibility to be "severely limited by his appearance and demeanor, his obvious bias, motivation and interest in this case to testify in a manner to bolster his collateral claims, and the unreasonableness of his testimony as contradicted by the transcript of the trial and plea proceeding[.]" As such, the trial court resolved factual disputes against Defendant.

The court concluded that trial counsel's performance was effective and noted trial counsel's efforts, including "lodg[ing] numerous objections before the trial[;]" seeking a curative jury instruction; stipulating Defendant's identity on the security camera footage in order to eliminate officer testimony that would reveal "numerous other criminal episodes[;]" interviewing the State's witnesses prior to trial; cross-examining the State's witnesses at trial; and making effective arguments to the court. The court found, "[c]learly, [trial counsel] was fully prepared for Defendant's trial." The court also noted that "the proof against Defendant was overwhelming." The court found that trial counsel "employed the best possible strategy this reviewing Court can fathom given the mountain of proof implicating Defendant in the theft[.]"

The court concluded that Defendant had failed to show "any deficient performance related to [Defendant]'s jury trial." The court found that trial counsel made strategic decisions "after effective preparation and investigation of the matters being presented before the jury." The court also concluded that Defendant failed to show that he suffered prejudice. The court noted that Defendant rejected a more favorable plea offer before trial, and at Defendant's request, trial counsel renewed plea negotiations "with vigor"

after the State rested its case. The court found that Defendant "was certainly assured of receiving a much larger sentence than four years according to our laws."

With regard to the voluntariness of Defendant's guilty pleas, the court reiterated that it "did not find [Defendant] to be a credible witness nor to have conveyed credible testimony." The court stated that there was "no credible proof that would lead this Court to question the veracity of [Defendant]'s solemn declarations made during the plea colloquy with the trial court." The court found that "Defendant's claim [of] not understanding the nature of the true terms of his four[-]year prison sentence is not credible and contradicted by the proof." The court noted Defendant's intelligence and familiarity with criminal proceedings and concluded that Defendant knowingly, freely, and intelligently entered his pleas.

*Analysis*

Defendant asserts that his guilty pleas were not knowingly and voluntarily entered. Specifically, he contends that: 1) the trial court failed to comply with Rule 11 of the Tennessee Rules of Criminal Procedure; 2) the trial court improperly interfered with and participated in the plea negotiations; and 3) the trial court improperly and incorrectly assumed that Defendant had a prior felony conviction.

Tennessee Rule of Criminal Procedure 32(f) permits a defendant to withdraw a guilty plea after a sentence is imposed but before a judgment becomes final only to "correct [a] manifest injustice." Tenn. R. Crim. P. 32(f)(2). A defendant has the burden of establishing a guilty plea should be withdrawn to correct a manifest injustice. *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). This court reviews a trial court's decision regarding a motion to withdraw a guilty plea for an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Id*. (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). Although manifest injustice is not defined by procedural rules or by statutes, this court has stated it must be determined on a case-by-case basis. *Turner*, 919 S.W.2d at 355. A trial court may permit a defendant to withdraw his guilty plea to prevent a manifest injustice, in relevant part, when a guilty plea was involuntarily and unknowingly entered and when a defendant received the ineffective assistance of counsel in connection with the entry of the plea. *Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005). A defendant, though, is not permitted to withdraw a guilty plea simply because he has a change of heart or is dissatisfied with the sentence imposed. *Turner*, 919 S.W.2d at 355.

- 6 -

In order for a guilty plea to be valid, it must be entered knowingly, voluntarily, and intelligently. *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977); *see North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Brady v. United States*, 397 U.S. 742, 747, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). If a guilty plea is not so entered, the defendant has been denied due process and the guilty plea is void. *Boykin*, 395 U.S. at 243 n. 5, 89 S. Ct. 1709 (quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969)); *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). To determine whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must look to "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Grindstaff v. State*, 297 S.W.3d 208, 218 (Tenn. 2009) (quoting *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003)). Some factors to consider in making this determination include:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Defendant contends that the trial court failed to comply with Rule 11 of the Tennessee Rules of Criminal Procedure, which sets forth the requirements for accepting a guilty plea. Specifically, Defendant asserts that the trial court did not advise him of the maximum possible penalty that he faced if convicted of the charges. See Tenn. R. Crim. P. 11(b)(1)(B). The State responds that the trial court substantially complied with the rule.

Literal compliance with the above advice to be given a defendant by a trial judge during a guilty plea hearing is not required. *Lane v. State*, 316 S.W.3d 555, 564 (Tenn. 2010). Rather, a trial court must substantially comply with the required advice. *Id.*; *State v. Newsome*, 778 S.W.2d 34, 38 (Tenn. 1989) ("The rule in *Mackey* requires trial judges in accepting pleas of guilty in criminal cases to adhere[ ] substantially to the procedure prescribed. We consider that requirement to relate to Criminal Procedure Rule 11 as well."). A trial court "substantially complies with these mandates when it expresses the sense of the substance of the required advice to a defendant who is seeking to plead guilty." *Lane*, 316 S.W.3d at 565 (citing *Howell*, 185 S.W.3d at 331). For instance, "[i]t is substantial compliance if the sense of the rights and information set out in the litany is

completely stated to the guilty-pleading defendant, on the record, even though the trial judge does not use the exact script suggested." *Lane*, 316 S.W.3d at 564 (quoting *State v. Neal*, 810 S.W.2d 131, 137 (Tenn. 1991). "Further, substantial compliance is not error." *Id*. "Where there is substantial compliance[,] the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly." *Id*.

The transcript of the plea hearing shows that the trial court failed to advise Defendant of the maximum penalty. The following colloquy occurred:

THE COURT: Did you discuss with your attorney had you gone to trial and been found guilty on this case and the other cases, the State could have asked for some of your cases to run consecutive and you could have received a far greater sentence than what you're receiving here today?

DEFENDANT NEWELL: Yes.

THE COURT: Did that calculate into your decision to go ahead and enter this plea here today?

DEFENDANT NEWELL: Yes, it did.

THE COURT: The fact that you may have received more time had you gone to trial and been found guilty.

DEFENDANT NEWELL: Yes, it did.

At the hearing on his motion to withdraw his pleas, Defendant testified about the above colloquy:

Q  And my question was [ ] this – do you recall this exchange between you and Judge Ross or the Court on the middle of page 102 says, . . . "And, and we discussed earlier, had you gone to trial and been found guilty on this and then the other charge, you could have received more time. Do you understand that?" And to which you replied, "Yes, Your Honor." And then Judge Ross says, "And once again, did that calculate into your decision in whether to enter this offer made by the State?" "Yes, it did, Your Honor."

A  Well, it did, I mean, to a certain extent, but I don't think – not to – I mean, the difference in time to me would have been minimal compared

to the four years, you know? It – I mean, we're talking like a – to me, I think at the time, we're talking maybe a difference of a few months, but still, that's substantial. So yeah, I did consider that, so that is a true answer."

We conclude that the trial court substantially complied with Tennessee Rule of Criminal Procedure 11. Defendant is not entitled to relief on this issue.

Defendant also contends that the trial court improperly participated in the plea negotiation process when it stated during a recess:

Well, but for the record, you all said something about taking a plea that's an open[-]ended [plea], but the State wants to agree to run it concurrent. Now I'm not going to have my hands tied on [sic] the middle of a trial. If you all want to work the case out – and I'll just be blunt. You know, he's been to the pen; he just got back. Any plea's going to have to include going to TDOC.

Tennessee Rule of Criminal Procedure 11(c) provides that "[t]he district attorney general and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement. The court shall not participate in these discussions." We conclude that the trial court's statement was not an improper interjection in the plea negotiation process. "[T]he ultimate question is whether a court can require the state to make a particular plea bargain offer. We hold that courts cannot do so. Plea bargaining is a matter which lies entirely within the prosecutor's discretion." *State v. Turner*, 713 S.W.2d 327, 330 (Tenn. Crim. App. 1986). There is nothing in the record to suggest that the trial court required the State to make a particular plea offer. Rather, the trial court stated its intention to reject a plea agreement that did not involve incarceration, which is within the trial court's discretion to do. Thus the trial court never required the State to make any negotiated plea offer; the trial court merely stated that it would not accept a negotiated plea agreement that did not require incarceration in the Department of Correction. The plea agreement in this case was entered pursuant to Rule 11(c)(1)(C), meaning that the parties "agree[d] that a specific sentence is the appropriate disposition of the case[,]" and "the court may accept or reject the agreement pursuant to Rule 11(c)(4) or (5), or may defer its decision until it has had an opportunity to consider the presentence report." Tenn. R. Crim. P. (c)(3)(A).

Next Defendant asserts that the trial court incorrectly assumed that Defendant had a prior felony conviction. Defendant refers to the trial court's statement quoted above that, "he's been to the pen[.]" Defendant argues that this incorrect assumption by the trial court caused the trial court to "interfere" in plea negotiations and reject any sentence that

did not involve confinement. The State responds that the trial court had the authority to accept or reject the plea agreement. *See* Tenn. R. Crim. P. 11(c)(5). We agree with the State. Furthermore, whether the trial court made an erroneous assumption that Defendant had a prior felony conviction is of no consequence to the voluntariness of Defendant's guilty plea. Just as the trial court could have rejected a plea involving community corrections or probation, Defendant could have rejected a plea offer to serve a sentence by incarceration.

Following the motion hearing, the trial court found that Defendant understood the terms of the plea agreement and entered into the agreement voluntarily. The court found that Defendant failed to show a manifest injustice which needed correction by Defendant withdrawing the guilty pleas. Upon review, we conclude that the trial court did not abuse its discretion in denying the motion to withdraw the guilty pleas.

Defendant also contends that his guilty pleas were entered unknowingly and involuntarily because he was denied the effective assistance of counsel. Specifically, Defendant alleges that: 1) trial counsel erroneously advised him as to his eligibility for community corrections; 2) trial counsel failed to inform him about the "true effect of his sentence and his release eligibility;" and 3) trial counsel had a conflict of interest.

Just as in a post-conviction context, the defendant has the burden of proving his allegations by clear and convincing evidence. *State v. Burns*, 6 S.W.3d 453, 461 n.5 (Tenn. 1999). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Ineffective assistance of counsel claims are mixed questions of law and fact, and as such, are subject to de novo review. *Burns*, 6 S.W.3d at 461. However, the trial court's findings of fact are conclusive on appeal unless the evidence in the record preponderates otherwise. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). This court will not re-weigh or re-evaluate this evidence on appeal. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997).

To establish a claim of ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order to succeed on a claim of ineffective assistance of counsel, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A defendant proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the defendant shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). In order to satisfy the prejudice requirement in the context of a guilty plea, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Garcia v. State*, 425 S.W.3d 248, 257 (Tenn. 2013).

First, Defendant asserts that trial counsel erroneously advised him he was eligible for community corrections. Defendant concedes that he was statutorily ineligible for community corrections but asserts that he involuntarily entered his guilty pleas under the assumption that he would receive a sentence of community corrections. At the plea hearing, defense counsel asked the trial court, "Your Honor, I did want to – he did want me to ask you if he could, if you would refer him to Community Corrections as part of the – ." The court replied, "No, I can't, based on his prior experience, I can't do that, okay? Can't do that. You understand all that now?" Following the hearing on Defendant's motion to withdraw his guilty pleas, the trial court discredited Defendant's testimony and accredited trial counsel's testimony that community corrections was never a part of the plea agreement. Both trial counsel and the prosecutor testified at the hearing that community corrections was never part of the plea agreement. There is nothing in the appellate record pertaining to the guilty plea hearing indicating that community

corrections was part of the negotiated agreement. The evidence does not preponderate against the trial court's conclusion. Defendant is not entitled to relief on this issue.

Next, Defendant asserts that his plea was entered unknowingly and involuntarily because trial counsel failed to inform him "about the true effect of his sentence and his release eligibility." Defendant argues that he thought he was entering his pleas in exchange for a sentence on community corrections and that he would only have to serve 30% of his four-year sentence if he violated community corrections. Once again, the trial court did not find Defendant's testimony to be credible. The trial court found that Defendant "was informed multiple times throughout the plea colloquy that he was accepting a prison sentence in the Department of Correction." The trial court found that Defendant "twice openly acknowledged the State's offer after hearing the full terms of his four[-]year incarceration sentence." The trial court also found that Defendant admitted his guilt and that he was entering a plea in order to "avoid receiving more punishment than the four[-]year agreed settlement."

The trial court's findings are supported by the record. At the plea submission hearing, the prosecutor stated several times that Defendant would be serving a four-year sentence in TDOC at 30 percent release eligibility. At the hearing on the motion to withdraw the pleas, trial counsel testified that he "always" tells his clients about the release eligibility percentage. He always tells them, "that's when you're eligible. You don't necessarily get out." The evidence does not preponderate against the trial court's conclusion. Defendant is not entitled to relief on this issue.

Finally, Defendant contends that he received ineffective assistance of counsel because the District Public Defender, trial counsel's boss, was related to the victim in one of Defendant's cases – the victim, who was also a co-defendant and potential witness in another of Defendant's cases, is the step-sister of the District Public Defender. Ineffective assistance of counsel may result when an attorney's performance is affected by a conflict of interest. *Strickland*, 466 U.S. at 692. Prejudice is presumed "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id*. A mere "potential conflict of interest" serves as no basis for a claim of ineffective assistance of counsel. *Clifton D. Wallen v. State*, No. E2000-02052-CCA-R3-PC, 2001 WL 839533, at *1 (Tenn. Crim. App., July 25, 2001), *perm. app. denied* (Tenn., Dec. 27, 2001).

In its order denying the motion to withdraw Defendant's guilty pleas, the trial court again found Defendant not to be a credible witness, and the court further found that trial counsel "investigated the matter and found nothing that would impair counsel's ethical obligations to [Defendant]." The court concluded that Defendant had not met his burden of proof that an actual conflict existed. Whether or not it would have been

prudent for trial counsel, an Assistant District Public Defender, to move to withdraw based upon his boss's relationship to a victim/co-defendant/adverse witness, is not the test. While the District Public Defender himself would have had a presumed conflict of interest in representing Defendant, there is absolutely no proof in the record that trial counsel had a *per se* conflict of interest for the purpose of ineffective assistance of counsel allegations in support of a motion to withdraw guilty pleas. According to the trial court's factual findings, Defendant failed to present credible evidence that trial counsel had any more than a "potential conflict of interest." *See Clifton D. Wallen*, 2001 WL 839533, at *1. Defendant is not entitled to relief on this issue.

CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____

THOMAS T. WOODALL, PRESIDING JUDGE